Woodruff, J.
The whole indictment is claimed to be defective, because in neither count is it in terms alleged that the forged instrument was, or purported' to be, sealed; and that, if not sealed, it could not operate as a deed. Therefore, it is claimed that the. ability to perpetrate a fraud thereby is wanting. (People v. Shell, 9 Cow., 778.) If void, it is no forgery. (17 Wend., 542; 8 Barb., 560.)
The words of the instrument set out in the indictment import a transfer of an interest in real estate. To the validity and efficiency of a grant in fee of a freehold estate to pass the title, a seal is necessary. (1 Rev. Stat., 738, § 137.)
The argument in support of the demurrer assumes that the instrument set out in the indictment purports to be a grant in fee of a freehold estate, and that, therefore, it is void if there be no seal.
Our statute declares that every person who shall be convicted of having forged, certified or falsely altered *679 any deed or other instrument, being or purporting to be the act of another, by which any right or interest in real property shall be, or shall purport to be, transferred, conveyed, or in any way changed or affected, * * * with intent to defraud, shall be adjudged guilty of forgery in the first degree. (2 Rev. Stat., 679, § 22.)
The indictment set out the instrument, and it concludes: “In witness whereof, I have hereunto set my hand and seal,” &c. It purports to be signed by the grantor, “Thomas Roch,” and in brackets annexed to his name are the letters “l. s.,” employed to indicate that the instrument is sealed.
But, averring the forgery of an instrument which contained the words, “ in witness whereof, I have hereunto set my hand and seal,” does not amount to an averment that a seal was in fact affixed to the name.. (Moore v. Jones, 2 Stra., 815; 2 Ld. Raymond, 1538; Van Sand-burn v. Sandford, 12 J. R., 197; Macomb v. Thompson, 14 J. R., 207.)
So in regard to the letters “l. s.” (Hanlon v. Camp, 4 Barb., 274); although, in certifying a copy to be a true copy of an original, if such letters were affixed to the name of the signer, it would be ordinarily inferred that the original had a seal, and that the letters “ l. s.” were the language of the certifying officer, and placed there by him as an assertion that in that place there is a seal. Still this is too loose to satisfy a requirement in the rules of pleading that a seal shall be averred. ■ •
As to this, and also as to the attestation clause, a conclusive test of their sufficiency as averments is this: Would they be fully satisfied, by proof on the trial, should an instrument be produced and given in evidence which had no seal? If they would, then they do not amount to an averment of sealing. It is plain that if the plaintiff in error had gone to trial, and a paper had been produced in the precise words set out in this indictment, and having *680 the professed, signature of Thomas Eoch, with brackets and the letters “l.-s.” annexed, the terms of .the indictment in this respect would be fully proved, and yet the instrument is not- sealed. As the matter is stated in this indictment, the letters “l. s.” are not the language of the pleader, nor his abbreviation of an averment that there is the place of a seal.
If, therefore, nothing in this indictment purported to aver the sealing except the giving of what is averred to be the tenor of the instrument, it could not be said that the indictment sufficiently charged the forging of an instrument under seal.
But the indictment does, in express terms, charge that the plaintiff in error did falsely and fraudulently and feloniously forge and counterfeit a certain deed purporting to be the act of one Thomas Eoch, by which a right or interest in real property purported to be transferred and conveyed.
Now, there cannot be a deed without a seal. This is true at the common law, as it is by our statute. Indeed, the plaintiff in error insists upon this as the very ground of his argument, while at the same time he insists that, averring the forgery of a deed does not aver a sealing. I do not perceive the consistencey of the proposition.
Our Legislature, when they defined the crime and presented the penalty of forging a deed, did not think it necessary to add the words under seal, or any other terms, to show that they meant by the word to describe a sealed instrument. The word imported that. The indictment here follows the statute, and if it was necessary to be more specific in giving details, the giving of the copy was quite sufficient to furnish such particulars. And hence, the indictment being read, states the forgery of a deed, and the copy, with the locus sigilli pointed out, is in perfect harmony with the legal import of -the averment. The *681 averment cannot be proved, except by evidence showing that an instrument having a seal was forged.
The whole object of the pleading is satisfied. The charge is absolutely definite and certain. It apprises the party indicted precisely what it is proposed to prove against him. The giving of the copy identifies the transaction in all its particulars, so that he has full opportunity to know what is charged, and prepare for trial, &c., so that a judgment upon the indictment will be an effectual bar to another prosecution for the same cause.
If, therefore, the question were entirely novel, and no guide could be found in adjudged cases, I should have no hesitation in saying the indictment was in this respect sufficient.
But I perceive no reason why the rule on this subject, well settled as to pleading in civil actions, should not be applied to an indictment. It is sometimes said, that in criminal prosecutions greater strictness should be observed. All that fian properly be intended by this is that, out of regard to human life and liberty, no rule designed to promote the fair conduct of a prosecution to fully apprise the party charged of the precise offense, to enable him to prepare for trial and to protect him from being twice vexed for the same cause, should be relaxed. It is not intended, to use the simile of an ancient law writer, that subtleties should be spun to such cobweb fineness that justice should fall through.
Every substantial object of a pleading, useful to the party charged, is secured in the present case.
The case of Fenton v. The People (4 Hill, 126), furnishes a striking analogy, and an example in which, in an indictment, it was held that the employment of a word which, ex vi termini, imported a material fact not expressly averred, was held. sufficient. There the indictment was for obtaining the signature of another to a mortgage by false pretense, and followed the words of the statute. It was *682 claimed that no offense was charged, because it was not averred that the mortgage, though signed, was ever delivered by the signer. The court held that the charge that the prisoner “ obtained ” the signature by false pretense, &c., imported that it was delivered to him.
The rule in civil actions, stated in the note to Cabell v. Vaughan (1 Williams’ Saunders, 291): “ There are some words of art, such as 1 indenture,’ ‘ deed,’ or ‘ writing-obligatory,’ which, of themselves, import that the instrument was sealed by the party, without the averment of sealing,” sustained by numerous cases there cited, quoted by Spencer, J., in Van Santvord v. Sandford (12 J. R., 197), does not appear to have been questioned"in modern times; and I perceive no reason why a charge of forgery and counterfeiting a deed should not import the falsely making of a sealed instrument, as truly as the charge of making a deed imports the execution thereof by seal. (See Francis Englefield’s Case, Leonard, 175; Heaton v. Wolf, 2 Roll. R., 228; Benson v. Nodger, Cro. Eliz., 737, “per scriptum obligatum;” Ashman v. Rypley, Cro. Jas., 420.) “ Sealing” is intended by the words “per scriptum obligatum.” (Bond v. Moyle, 2 Vent., 107; Woodcock v. Morgan, 6 Mod., 306; Atkynson v. Cratsworth, 1 Stra., 512.) I cannot regard the hesitating conclusion of the judges in Rex v. Norton (3 Keble, 356), as sufficient ground for rejecting the analogy of these cases, or the conclusion which, I think, good sense and sound reason compels.
Another view of the subject is entitled to some consideration, though not suggested on the argument. The whole argument for the appellant rests upon the assumption that the indictment could not be sustained, if the instrument be not sealed. That is doubtless true, if the averment that the plaintiff in error forged a deed is an averment of sealing, and that is the conclusion above stated; but that is fatal to the demurrer.
Let it be supposed, then, for a moment, that such is not *683 the force of the averment, does it follow that the instrument-is void? The statute requires a seal to the grant in fee of a freehold. Nothing in the indictment shows that the interest of Thomas Eoch was a freehold. An interest in real estate may be created by writing, without a seal. (2 Rev. Stat., 135.) The forgery of an instrument creating or transferring an equitable interest, is within the statute, 11 a deed or other instrument, by which any right or interest in real property shall be, or shall purport to be, transferred, .conveyed, or in any manner charged or affected.” (2 Rev. Stat., 738.) An instrument intended as a deed of bargain and sale, made upon sufficient consideration, may operate • as an agreement, though defective; and especially it may • when the right, title and interest to be affected thereby is merely equitable.
I am not prepared to concede that the instrument set forth in this indictment is void, if not sealed, and if not, then the whole argument on this point fails. For, if ' averring the forgery of a deed imports forgery of a sealed instrument, then the indictment is sufficient for that reason; . and, if averring the forgery of a deed does not ex vi termini import the forgery of a sealed instrument, then the indictment is sufficient because the instrument, even if not sealed, is effective to create an interest in real estate.
Another objection, urged to this indictment, relates to the fourth, fifth, sixth, seventh, eighth and ninth counts, and is, that they do not sufficiently aver the offense of uttering and publishing. It is not denied, that they follow the words of the statute, which is: “ Every person who shall be convicted of having uttered and published as true and with intent to defraud, any forged, altered, or counterfeited instrument, * * * knowing such instrument * * * to be forged, altered or counterfeited, shall suffer,” &c.
This is charged in terms; but it is said, that it is not enough that the indictment follows the words of the stat *684 ute, it must state in other terms, what the party did, and that must appear to be an uttering and publishing of the instrument, or at all events, if the party state the act claimed to be an uttering and publishing, it must amount thereto in law.
Here, in five of the counts, the allegation is that the plaintiff in error uttered and published the forged.deed, by causing it to be recorded in the office of the clerk of Washington county, as genuine and true.
I cannot doubt that this was uttering and publishing, within the just meaning of these terms. That act must be judged of in the light of our statutes, which authorize and give effect to the recording of deeds. They make the recording notice to all the world of the claim, or apparent title conferred by the instrument, and make the record itself evidence in courts of justice. Of necessity, then, the placing upon record an instrument apparently conveying title per se, creates a doubt of the title of the pretended grantor, and is an assertion of the right of the pretended grantee. It is made to operate usefully to the apparent grantee, prejudicially to the apparent grantor, by the very act of placing on record.
The case of an instrument having no operation in the hands of the forger, and, not made nor offered to be made efficient in any manner, may be be different. The discussion of this subject, in the People v. Rathbone (21 Wend., 509), and the cases there cited, show not only that a deed of real estate may be uttered, within the meaning of the statute, and that the term uttering is not used in the restricted sense of selling or negotiating, which would be wholly inappliable to such an instrument.
The suggestion that the plaintiff in error did not commit the offense, that, if recording be uttering, the county clerk is the offender and the plaintiff a mere accomplice, is entitled, I think, to but slight consideration. For all legal purposes, delivering to the county clerk for *685 record completes the act. The clerk is the mere instrument by which the deed is spread upon the books of record, and the moment it was lodged for record in the office it became operative.
And, if this view be correct, it is not less clear that the charge in the seventh count, that such uttering was by setting up the same as genuine and true, in a complaint in an action wherein the party charged is plaintiff, and the parties intended to be defrauded are defendants, is sufficient.
In the language of the court below, in which I fully concur, the setting up of the instrument in the suit, and the founding of a right thereon in a court of justice, was an assertion, in the most solemn manner, of its genuineness and value. This was a very emphatic use and employment of it, for the purpose of maintaining and enforcing an asserted right.
The remaining objection is, that it does not appear by the indictment how the persons named were to be defrauded by the instrument. The answer is, that this is matter to be proved.
The felonious forging and uttering and publishing, with intent to defraud parties named, are stated. They are persons shown to have an interest in the property. They were in a situation in which they could be prejudiced by giving faith and credit to the instrument. But it is an elementary rule, that the intent to defraud being duly averred, it is not necessary that the pleading should state the manner in which the party was to be defrauded. (2 Russ. on Crimes, 383, and cases cited.)
And Mr. Justice Bookes, in the opinion below, has collected numerous cases which show that it is wholly. unnecessary in pleading to enter into the details by which the intent to defraud is to be or may be established.
These are matters to be given in evidence on the trial in support of the averment of fraudulent intent. (The *686 People v. Stearns, 21 Wend, 409; Commonwealth v. Mc Donald; 5 Cush., 365; 4 Allen, 311; 9 Allen, 274; 2 Carr. & Kir., 293; Russ. & Ry., 154; Bard. Cr. L., 109.)
I have thus considered the points discussed in this case by the counsel, relating to the sufficiency of the indictment, being uncertain what view my brethren, on our final consultation, would take of the question, whether in the present state of the record we can review the order of the Supreme Court, reversing the judgment of the Oyer and Terminer sustaining the demurrer.
The consequences of our decision, to the plaintiff in error, whether we affirm the order of the Supreme Court or dismiss the writ, are not.widely different.
In either case, the Court of Oyer and Terminer must proceed upon the matter to a final judgment. Nevertheless, if the record does not show that the proceedings below are in a condition proper for review here, we ought to dismiss the writ.
The judgment below is not a final judgment. The reversal which has been had in the Supreme Court, in effect, overrules the demurrer to the indictment, and in such case there is no judgment until' the Court of Oyer and Terminer proceed therein.
After final judgment for the people in the Oyer and Terminer, such judgment being affirmed in the Supreme Court, the plaintiff is entitled of right to come to this court (2 Rev. Stat., 740, § 15) for a review of the judgment, and it is not proper, nor, as I think, permissible to the plaintiff in error to enter into this court for a review of the same matter.
I find no warrant for his coming here to review any other than a final judgment. That is the term employed in the statute, and where similar questions have arisen in this court, the ruling here excludes the idea that any other can be reviewed.
In the People v. Nestle (19 N Y., 583), the construe *687 tion of the act of 1852 (chap. 82), authorizing the people to bring a writ of error to this court was considered1, and was held to warrant such writ only after final'judgment .had been entered in favor of the defendant, and in Hill v. The People (10 N. Y., 463), it was held that, under the practice of the former court of errors and the judiciary act of 1847, this court could not review a.record of conviction which did not show that judgment had been pronounced.
If these views are correct, the writ of error should be dismissed and the record be remanded.
All the judges, except Miller, J., concurred in the opinion of Judge Woodruff that the indictment is sufficient. The court were unanimous in the opinion that the writ of error must be dismissed.
Writ of error dismissed.